**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

Case No. 09-35713

LARRY E. MAXWELL

        Debtor

**MEMORANDUM ON
MOTION TO AVOID LIEN**

**APPEARANCES:**    SANDIFER & HUDDLESTON, PLLC
        Catherine B. Sandifer, Esq.
        320 Wears Valley Road
        Pigeon Forge, Tennessee 37863
        Attorneys for Debtor

        GENTRY, TIPTON & McLEMORE, P.C.
        Tyler C. Huskey, Esq.
        2430 Teaster Lane
        Suite 210
        Pigeon Forge, Tennessee 37863
        Attorneys for Tennessee State Bank

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Motion to Avoid Lien filed by the Debtor on May 14, 2010, asking the court to avoid a judgment lien in favor of Tennessee State Bank encumbering the Debtor's residential real property in Sevierville, Tennessee, because the lien impairs his homestead exemption. Tennessee State Bank filed its Objection of Tennessee State Bank to Motion to Avoid Lien on May 28, 2010, arguing that the underlying debt arose out of a mortgage foreclosure and is thereby exempt from avoidance pursuant to 11 U.S.C. § 522(f)(2)(C) (2006). The facts and documents necessary for the resolution of the initial issue presently before the court are stipulated through the Stipulations of Larry E. Maxwell and Tennessee State Bank (Joint Stipulations) filed on June 24, 2010. The Memorandum Brief of Tennessee State Bank in Support of its Objection to Debtor's Motion to Avoid Judgment Lien (Bank's Brief) was filed on July 6, 2010, and the Memorandum Brief of Debtor Larry E. Maxwell in Support of his Motion to Avoid Judgment Lien of Tennessee State Bank (Debtor's Brief) was filed on July 15, 2010.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(K) (2006).

**I**

The Debtor filed the Voluntary Petition commencing his Chapter 7 bankruptcy case on October 16, 2009, including within his scheduled property a residence located at 3815 Abbott Road, Sevierville, Tennessee (Abbott Road Property), against which he has claimed a homestead exemption in the amount of $5,000.00. JT. STIPS. ¶¶ 1, 12. Tennessee State Bank is a creditor of the Debtor by virtue of a judgment lien encumbering the Abbott Road Property. Tennessee State Bank's judgment lien derives from the following: (1) a security agreement and promissory note in

2

the amount of $189,000.00 dated August 30, 2005, from the Debtor and Michael McConnell, secured by Lots 4, 5 and 6 of Thunder Mountain Subdivision in Sevier County, Tennessee, as evidenced by a Deed of Trust also dated August 30, 2005; and (2) a security agreement and promissory note in the amount of $30,175.00 dated October 2, 2007, from the Debtor and Michael McConnell, secured by Lot 25R of Fox Vista Phase II in Sevier County, Tennessee, as evidenced by a Deed of Trust dated September 11, 2006.  JT. STIPS. ¶¶ 2-5; Ex. A through Ex. D.  The Debtor defaulted on his obligations under the foregoing promissory notes, and Tennessee State Bank foreclosed upon the real property secured by the respective Deeds of Trust.  JT. STIPS. ¶¶ 6-7.  The foreclosures resulted in a deficiency in the amounts owed to Tennessee State Bank, and on September 24, 2008, it filed a complaint in the Chancery Court for Sevier County to collect the deficiency amount.  JT. STIPS. ¶ 8; Ex. E.  A default judgment was entered against the Debtor on December 15, 2008, in the amount of $40,589.57, which was recorded with the Sevier County Register of Deeds on January 12, 2009.  JT. STIPS. ¶¶ 9-10; Ex. F.  In addition to the judicial lien, the Abbott Road Property is also encumbered by mortgage liens in favor of Tennessee State Bank and Wells Fargo.  JT. STIPS. ¶¶ 12-14; Ex. G.

As stated in the pretrial Order entered on June 11, 2010, the broad issue is whether Tennessee State Bank's judicial lien is avoidable, in whole or in part, pursuant to 11 U.S.C. § 522(f)(1)(A) (2006). The threshold issue, and the subject of this Memorandum, is limited to whether Tennessee State Bank's judicial lien is grounded on "a judgment arising out of a mortgage foreclosure" thus exempting it from avoidance under § 522(f)(1)(A) by 11 U.S.C. § 522(f)(2)(C), with all other issues reserved.  In support of his Motion to Avoid Lien, the Debtor argues that the default judgment forming the basis of Tennessee State Bank's judicial lien did not arise out of a mortgage foreclosure.

3

On the other side, Tennessee State Bank argues that the default judgment represents the deficiency balance following a foreclosure and thus, § 522(f)(2)(C) applies and its lien cannot be avoided by the Debtor.

## II

The Debtor's bankruptcy estate, inclusive of all property and interests owned by him, was created upon the filing of his petition. *See* 11 U.S.C. § 541 (2006). Nevertheless, to facilitate the "fresh start" purpose of bankruptcy relief, certain property was claimed as exempt and subtracted from the Debtor's bankruptcy estate. *See* 11 U.S.C. § 522(b)(2) (2006); *In re Arwood*, 289 B.R. 889, 892 (Bankr. E.D. Tenn. 2003). As is relevant to this contested matter, the Debtor claimed an exemption in the Abbott Road Property pursuant to Tennessee Code Annotated § 26-2-301 which provides, in material part, that "[an] individual, whether a head of family or not, shall be entitled to a homestead exemption upon real property which is owned by the individual and used by the individual or the individual's spouse or dependent, as a principal place of residence. The aggregate value of such homestead exemption shall not exceed five thousand dollars ($5,000) . . .[.]" TENN. CODE ANN. § 26-2-301(a) (Supp. 2010).

"[T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is – (A) a judicial lien . . .[.]" 11 U.S.C. § 522(f)(1)(A). The determination of whether an exemption is impaired is set forth in subsection (f)(2), which states as follows:

  (2)(A) for the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of —

    (i) the lien;

    (ii) all other liens on the property; and

    (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

  (B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.

  (C) This paragraph shall not apply with respect to a judgment arising out of a mortgage foreclosure.

11 U.S.C. § 522(f)(2). The § 522(f)(2)(A) formula is "a relatively simple calculation of value minus the sum of other liens, the exemption, and the judicial lien to be avoided. In the event this formula produces a negative number, the judicial lien must be avoided in that amount since this is the extent to which the exemption is impaired." *Sheth v. Affiliated Realty & Mgmt. Co. (In re Sheth)*, 225 B.R. 913, 916 (Bankr. N.D. Ill. 1998); *see also In re Northern*, 294 B.R. 821, 827 (Bankr. E.D. Tenn. 2003).[1] It is, nevertheless, subject to the limitations of subsections (B) and (C).

Through § 522(f)(2)(C), Congress has limited a debtor's ability to avoid a judicial lien when "arising out of a mortgage foreclosure;" however, there is a split of authority as to whether this subsection applies to situations such as the Debtor's, where a non-judicial foreclosure has occurred

---

[1] The amount of a judicial lien exceeding the impairment is not avoided, as "partial lien avoidance is appropriate in these circumstances and . . . full avoidance is inconsistent with the language and intent of the statute." *Tedeschi v. Falvo (In re Falvo)*, 227 B.R. 662, 666 (B.A.P. 6th Cir. 1998). Additionally, "value" is defined as the "fair market value as of the date of the filing of the petition[,]" 11 U.S.C. § 522(a)(2) (2006), and "[t]he determination of 'impairment' is based on the value of the 'exempt' property at the petition date." *In re Oster*, 293 B.R. 242, 246 (Bankr. E.D. Cal. 2003).

under state law, a deficiency judgment has been obtained, and the deficiency judgment serves as the basis for a judicial lien upon other property owned by the judgment-debtor. The majority of cases hold that suits to collect a deficiency judgment following a foreclosure "do[] not come within the protections of 11 U.S.C. § 522(f)(2)(C)." *Cal. Cent. Trust Bankcorp v. Been (In re Been)*, 153 F.3d 1034, 1036 (9th Cir. 1998); *accord In re Burns*, 437 B.R. 246 (Bankr. N.D. Ohio 2010); *In re Phillips*, 2010 Bankr. LEXIS 710, 2010 WL 816150 (Bankr. N.D. Ala. Mar. 5, 2010); *In re Anderson*, 2010 Bankr. LEXIS 237, 2010 WL 322167 (Bankr. N.D. Ill. Jan. 25, 2010). Two decisions come down on the opposite side, however, providing that deficiency judgments following a foreclosure are within the scope of § 522(f)(2)(C) and may not be avoided. *See In re Criscuolo*, 386 B.R. 389, 392 (Bankr. D. Conn. 2008); *In re Vincent*, 260 B.R. 617, 618 (Bankr. D. Conn. 2000). Finally, the First Circuit Court of Appeals has held that "application of state law is inappropriate because the statute is not ambiguous," and deficiency judgments are not within the purview of § 522(f)(2)(C). *Banknorth, N.A. v. Hart (In re Hart)*, 328 F.3d 45, 48 (1st Cir. 2003).

Finding that the statute was not ambiguous, the *Hart* court came to the following conclusions:

> Like the Appellate Panel, when we examine the structure of § 522 and analyze the placement of § 522(f)(2)(C) within this structure, we find that the meaning of "this paragraph" is not ambiguous and that [§] 522(f)(2)(C) does not create any exception to otherwise avoidable judicial liens. Congress uses "paragraph" to refer to the numbered sections of the statute, and specifically, uses "this paragraph" to refer to § 522(f)(2). This structural analysis also makes it clear that Congress uses "this subsection" in § 522(f)(2)(A) to refer to all of § 522(f). Consequently, we are to utilize § 522(f)(2)(A)'s impairment formula for all judicial liens.
>
> Section 522(f)(2)(C) does not create different treatment for "a judgment arising out of a mortgage foreclosure." Instead, Congress used § 522(f)(2)(C) to

6

> contrast mortgage foreclosure judgments from liens which are avoidable under § 522(f), clarifying that the entry of a foreclosure judgment does not convert the underlying consensual mortgage into a judicial lien which may be avoided. Mortgage foreclosure judgments do not become judicial liens subject to avoidance under § 522. "Rather, a deficiency judgment – whether it arises in a foreclosure action as in Maine or in a separate action as in Massachusetts – is a non-consensual judicial lien like any other which is subject to avoidance under § 522(f)." *In re Linane*, 291 B.R. 457, 461 (Bankr. N.D. Ill. 2003).
>
> Our interpretation provides a logical and coherent reading of Congress' organization of § 522. If Congress intended to except mortgage foreclosure judgments, then § 522(f)(1) was the natural, and trouble-free, place to insert such an exception. Congress' chosen language supports our interpretation. Congress uses the word "lien" throughout § 522(f) and only uses "judgment" in § 522(f)(2)(C). As the Appellate Panel pointed out, Congress would have used the word "lien" if it intended to exclude deficiency judgment liens. "It is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002) (quotation marks and citation omitted).

*Hart*, 328 F.3d at 48-49.

Conversely, the *Vincent* court examined the issue, finding instead that § 522(f)(2)(C) is ambiguous and holding that "although they are ambiguous in the present context, the words, 'judgment arising out of . . . a mortgage foreclosure,' more naturally suggest the mechanics of a Connecticut deficiency judgment rather than that of mortgage transmutation [as argued by the debtors]." *Vincent*, 260 B.R. at 621-22 (footnote omitted). The court additionally explained that "[i]n Connecticut a deficiency judgment is part and parcel of a mortgage foreclosure action. A deficiency judgment is purposed by motion within the foreclosure action." *Vincent*, 260 B.R. at 622 n.3.

The *Vincent* decision was reaffirmed in *Criscuolo*, which engaged in a fuller analysis of the statute and primarily distinguished its holding from that in *Hart*. In addition to stating that because the wording of § 522(f)(2) "standing alone and in relation to the broader statutory structure [] are impossible to interpret without recourse to extra-textual materials and considerations[,]" the court also criticized *Hart*, stating that the statutory construction analyzed by the First Circuit "does not literally preclude *avoidance* under *subsection (f) of Section 522*." *Criscuolo*, 386 B.R. at 393, 394 (emphasis in original). Expounding further, the court held that

> [T]he literal meaning of [§ 522(f)(2)(C)] is that while mortgage foreclosure-related judgments *are* subject to avoidance under subsection *522(f)*, such avoidance is *not governed by [§ 522(f)(1) and (2)]*. The resulting problem, however, is that such a construction produces an absurd result – it technically allows avoidance of mortgage foreclosure-related property interests, but does not supply any analytical standards for that avoidance, such as the quantitative guidelines of [§ 522(f)(1)] – which is applicable to the avoidance of *all other* property interests. This inscrutable result of a literal reading of [§ 522(f)(2)(C)] renders the Hart courts' "plain meaning" determination – or any other assertion of "plain meaning" – untenable.

*Criscuolo*, 386 B.R. at 394 (emphasis in original). The *Criscuolo* court also found that, notwithstanding the lack of legislative history, § 522(f)(2)(C) "was intended as a component of a Congressional scheme of favorable statutory treatment for mortgagees, so as to encourage and sustain a flow of affordable capital into the real estate lending market" and this "Flow of Capital Purpose is a public policy concern that Congress has articulated and honored in other Bankruptcy Code contexts." *Criscuolo*, 386 B.R. at 394-95. Acknowledging that the codified language of § 522(f)(2)(C) "does not perfectly serve the Flow of Capital Purpose, or for that matter, any other purpose," the *Criscuolo* court continued that it "believes that this is one of those rare instances in which Congress failed to draft a statutory provision in a manner that plainly effectuated its true

legislative purpose" but that courts still carried "the difficult task of construing statutes to effectuate the *most likely* Congressional purpose." *Criscuolo*, 386 B.R. at 395.

>Coming down on the opposite side, however, the *Phillips* court held the following:
>
>In this Court's opinion, the obvious purpose behind § 522(f)(2)(C) is to prohibit debtors from avoiding judgments entered during judicial foreclosure proceedings, but before the actual foreclosure sale, and thereby avoid the mortgage-debt as established by the judgment to the extent of the debtor's homestead exemption. If judgments of foreclosure and similar decrees could be avoided, then in states allowing large homestead exemptions a substantial portion, if not all of the mortgage-debt could be avoided leaving the happy chapter 7 debtor with not only a financial fresh start after discharge, but also with a greatly reduced or totally avoided home mortgage. Such would be an absurd result and clearly not one intended by Congress.

*Phillips*, 2010 Bankr. LEXIS 710, at *8-9, 2010 WL 816150, at *3 (footnote omitted). Analyzing § 522(f)(2)(C) in conjunction with Alabama law, the court deduced that

>[a]s with any secured debt, if disposition of the collateral by a mortgage-creditor does not result in full payment, the creditor may pursue collection of the deficiency by filing suit against the borrower. But in any event, whether a suit to collect the mortgage-debt is filed post- or pre-foreclosure, the resulting judgment is not part of the foreclosure process under Alabama law, and cannot be accurately defined as a "judgment arising out of a mortgage foreclosure."

*Phillips*, 2010 Bankr. LEXIS 710, at *8, 2010 WL 816150, at *3.

Similarly, the Ninth Circuit Court of Appeals, stating that the issue was "whether the plain meaning of 'judgment arising out of a mortgage foreclosure' encompasses [a] judgment lien[,]" looked to the effect of the foreclosure upon the creditor's lien under state law and held that under California law, the lien had been extinguished by the foreclosure, however, the creditor was "permitted to bring an independent action on the underlying promissory note for the balance that the debtor still owes after the . . . foreclosure sale[,]" but that it was "a suit on the note without regard

to the deed or the location of the property." *Been*, 153 F.3d at 1036. Accordingly, the court found that the judicial lien was "based upon a default judgment taken from the suit on the note and complaint for money damages[ and] does not come within the protections of 11 U.S.C. § 522(f)(2)(C)." *Been*, 153 F.3d at 1036.

Likewise, the other courts forming the majority have looked to their respective states' laws concerning foreclosures and the nature of the underlying judgments forming the bases for the judicial liens in question. *See, e.g., In re McMorris*, 436 B.R. 359, 363-64 (Bankr. M.D. La. 2010) (applying Louisiana law and determining that the deficiency judgment "was merely incidental to the mortgage foreclosure and not a 'judgment arising out of a mortgage foreclosure.'"); *In re Linane*, 291 B.R. 457, 460 (Bankr. N.D. Ill. 2003) (applying Illinois law whereby "a deficiency judgment relates back to its associated foreclosure proceeding in that the deficiency amount coalesces into a discrete monetary sum when the sale is consummated[, but] . . . deficiency judgments, as a remedy, are distinct from, and complementary to foreclosures, and arise out of the underlying obligation, not 'out of a mortgage foreclosure[.]'"); *In re Smith*, 270 B.R. 557, 561-62 (Bankr. W.D.N.Y. 2001) (applying New York law which provides that a "deficiency judgment is not a relief of foreclosure, but a remedy that is ancillary to the foreclosure" and that "although a deficiency judgment may arise out of the foreclosure proceeding, it cannot be said to arise out of the foreclosure itself.").

Finally, in *Burns*, the only Sixth Circuit case addressing this issue, the court looked to Ohio law, which designates a party's right to a judgment on a note evidencing a debt on a mortgage as a legal remedy and separate cause of action from the right to foreclose, an equitable remedy, and held that "this distinction removes a deficiency judgment lien from the purview of § 522(f)(2)(C) as it is

10

a complimentary remedy that arises out of the underlying obligation, not out of a mortgage foreclosure." *Burns*, 437 B.R. at 252-53 (citations omitted). Explaining that it could not "pretend to discern any particular insight illuminating the present issue from the [Code's] definitions [of 'judicial lien' and 'lien'] themselves," the court stated that "it nevertheless seems more likely that Congress took care in using the word 'judgment' instead of terms it had otherwise defined." *Burns*, 437 B.R. at 253. It also expressly declined to follow *Vincent* and *Criscuolo*, instead finding the *Hart* decision persuasive and agreeing that

> § 522(f)(2)(C) is a clarification that the entry of a foreclosure judgment does not convert the underlying consensual mortgage into a judicial lien that may be avoided [and] is consistent with the treatment elsewhere in the Bankruptcy Code of claims secured by a mortgage on real estate, . . . and faithful to Congressional intent in enacting § 522(f) in the first place, which was to provide debtors in Chapter 7 proceeding[s] with a fresh start and preserve their entitlement to the exemptions provided by § 522.

*Burns*, 437 B.R. at 253.

Finding the analyses to be persuasive, this court likewise agrees with the decisions in *Burns*, *Been*, *Hart*, and the others subscribing to the majority view and holds that the purpose of § 522(f)(2)(C) was to remove from the application of § 522(f) any judgment for a foreclosure in states requiring judicial foreclosures or wherein the deficiency judgment is a portion of the foreclosure judgment and not a separate action to collect a deficiency balance on a previously secured but, post-foreclosure unsecured, debt.

The common law concerning deficiency balances as adopted in Tennessee and set forth in § 8.4(a) of the Restatement 3d of Property (Mortgages) provides that "[i]f the foreclosure sale price is less than the unpaid balance of the mortgage obligation, an action may be brought to recover a

deficiency judgment against any person who is personally liable on the mortgage obligation in accordance with the provisions of this section." *See, e.g., Lost Mountain Dev. Co. v. King*, 2006 Tenn. App. LEXIS 810, at *22, *25-26, 2006 WL 3740791, at *7-8 (Tenn. Ct. App. Dec. 19, 2006); *see also* RESTATEMENT 3D OF PROPERTY (MORTGAGES), cmt. a ("This section adopts the widely held view that when the foreclosure process does not fully satisfy the mortgage obligation, the mortgagee may obtain a deficiency judgment against any person who is personally liable on that obligation. Thus, this section rejects the approach of those states that prohibit a deficiency judgment after foreclosure of a purchase money mortgage, or that prohibit deficiency judgments after a foreclosure by power of sale.").[2]

As is clear, in Tennessee, as in Ohio, Alabama, and the other jurisdictions following the majority view, a deficiency judgment is not part and parcel of a foreclosure action but requires that a distinct and separate action must be brought by a creditor. This procedure was precisely that employed by Tennessee State Bank: it foreclosed upon the Deeds of Trust securing its Promissory Notes from the Debtor, applied the sale price collected to the indebtedness, and filed a separate action in the Sevier County Chancery Court seeking a judgment for the deficiency balance due under the terms of the Promissory Notes executed by the Debtor, together with interest, attorneys' fees and costs. When the Debtor did not answer, the Default Judgment was entered, and once it became final, Tennessee State Bank recorded it with the Sevier County Register of Deeds, creating a judicial judgment lien against any and all real property owned by the Debtor in Sevier County, including the

---

[2] Currently, a deficiency judgment in Tennessee arising from a foreclosure sale of real property is governed by statute. *See* TENN. CODE ANN. § 35-5-118 (Supp. 2010). This statute, with an effective date of September 1, 2010, has no application to the present matter.

12

Abbott Road Property. The judgment lien, however, did not "arise out of a mortgage foreclosure" (§ 522(f)(2)(C)) but out of the separate Chancery Court action to recover the deficiency balance still owing on the Promissory Notes after the foreclosure sale of the Abbott Road Property. Accordingly, Tennessee State Bank's judicial lien is not exempted from avoidance under § 522(f)(2)(C).

An order consistent with this Memorandum will be entered.

FILED: November 16, 2010

>BY THE COURT
>
>/s/ RICHARD STAIR, JR.
>
>RICHARD STAIR, JR.
>UNITED STATES BANKRUPTCY JUDGE